UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

JOSE J. SHOMO,

        Plaintiff,

        v.

STATE OF NEW YORK;
N.Y.S. DEPARTMENT OF CORRECTIONAL SERVICES;
ANTHONY F. ZON, Superintendent, Wende Correctional Facility
SUSAN POST, Deputy Superintendent of Health;
G. MONAHAN, Deputy Superintendent of Security;
LT. WALTERS, Hearing Officer;
C.O. DORIS MOODY, Correctional Officer;
C.O. BELLE, Correction Officer;
MARY CLEMONS, Chief Physician;
STANLEY BUSKOWSKI, Physician;
RICHARD COWEN, Physician;
NARCY CZAJKA, Director of Nursing;
C. HOLLAND, Nurse Administrator;
J. VESHIA, Nurse Administrator;
J. RADDER, Nurse;
JOAN HERBERT, Nurse;
LENARD R. TERRY, Nurse;
ROBERT STACHOWSKI, Nurse;
C. AMES, Nurse;
K. GOWEL, Nurse's Aide;
C. GAMMONS, Nurse's Aide;
LISA LAUDERO, Nurse's Aide;
ASHLEY McCUBBIN, Nurse's Aide;
C.O. HODGES, Correction Officer;
C.O. WEBER, Correction Officer;
STEVE JINKS, Correction Officer;
D. PRIVETTE, Correction Officer;
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT
CIVIL ACTION
JURY TRIAL DEMANDED

06 CV 0353

Index No.

## COMPLAINT

    1.  Plaintiff, JOSE J. SHOMO, Pro Se, for this complaint

states as follows:

### PARTIES

    2.  Jose J. Shomo (Plaintiff) is an inmate currently confined

at Wende Correctional Facility (Wende), Wende Rd., Box 1187, Alden,

New York 1004-1187.

3.   Plaintiff is, and was at all relevant times herein an adult citizen of the United States and a resident of the Great State of New York.

4.   Defendant State of New York (NYS) is, and was at all relevant times herein a soverign state of these United States, and as such it has the power and authority to enact laws and incarcerate persons who commit crimes within the state, and therefore, it has the duty to maintain prisons and is responsible for those prisoners' in their care, custody and control.

5.   Defendant New York State Department of Correctional Services (DOCS) is, and was at all relevant times herein an agency of NYS, duly entrusted with the responsibility to maintain all prisons and prisoners' within their care, custody and control.

6.   Defendant Anthony F. Zon is, and was at all relevant times herein the Superintendent of Wende, as such, it was Zon's responsibility for maintaining all DOCS staff and functions at Wende and to ensure that all inmates therein received the proper medical care and treatment.

7.   Defendant Susan Post (Post) is, and was at all relevant times herein DOCS Deputy Superintendent of Health Services at Wende, as such, it was Post's responsibility for maintaining all medical staff and functions at Wende's Regional Medical Unit (RMU), and to investigate and respond to complaints filed against medical staff.

8.   Defendant G. Monahan (Monahan) is and was at all relevant times herein DOCS Deputy Superintendent of Security at Wende,

2

as such, it was his responsibility to oversee all security personnel as well as review Disciplinary Tier 2 Hearings Dispositions and either reverse, affirm or modify such disposition.

9. Defendant Lieutenant Walters (Walters) is, and was at all relevant times herein a Correction Officer of the rank of lieutenant at Wende, in such capacity he was designated as the Wende Tier 2 Disciplinary Hearing officer who's responsibility it was to convene and determine all inmate disciplinary matters.

10. Defendant Correction Officer McCorkel (McCorkel) is, and was at all relevant times herein a Correctional Officer in service at Wende, as such, it was his responsibility to see that inmates at Wende obeyed all rules and regulations.

11. Defendant Doris Moody (Moody) is and was at all relevant times herein a Correctional Officer in service at Wende, as such, it was her duty to see that all inmates obeyed all rules and regulations.

11(A). Defendant Correction Officer Belle (Belle) is, and was at all relevant times herein a Correctional Officer in service at Wende, as such, it was her responsibility to see that all inmates obeyed all rules and regulations.

12. Defendant Mary Clemens (Clemens) is, and was at all relevant times herein DOCS Chief Physician at Wende RMU, as such, it was Clemens' responsibility to oversee all functions and operations of the Wende RMU, and to examine patients therein and either treat them or refer them for the needed care.

13. Defendant Stanley Bukowski (Bukowski) is and was at all relevant times herein a Physician at Wende's RMU, as such,

3

it was Bukowski's responsibility to examine patients therein and either treat them of refer them for the needed care.

14.  Defendant Richard Cowan (Cowan) is, and was at all relevant times herein employed at DOCS as a "Contract Physician", whose specialty is neurology, as such, it was Cowan's responsibility to evaluate patients at Wende for possible neurological disorders and refer them for the needed care thereafther.

15.  Defendant Narcy Czajka (Czajka) is, and was at all relevant times herein employed by DOCS as the Diredtor of Nursing at Wende's RMU, as such, it was Czajka's responsibility to oversee all administrative functions of the nursing aspects of the Wende RMU.

16.  Defendant C. Holland (Holland) is and was at all relevant times herein employed by DOCS as their Nurse Administrator at Wende RMU, as such, it was Holland's  responsibility to supervise all nursing staff at RMU, and to investigate and respond to all complaints filed against nursing staff.

17.  Defendant J. Radder (Radder) is and was at all relevant times herein employed by DOCS as a nurse at Wende RMU, as such, it was Radder's responsibility to supervise all nursing staff on RMU housing units, and to oversee the daily operations of said units and records keeping.

18.  Defendant Joan Herbert (Herbert) is and was at all relevant times herein employed by DOCS as a nurse at Wednd RMU, as such, it was Herbert's responsibility to supervise all nursing staff on RMU housing units, and to oversee the daily operations said units and record keeping.

⊢

18(A).  Defendant Robert Stachowski (Stachowiski) is and was at all relevant times herein employed by DOCS as a nurse at Wende RMU, as such, it was Stachowski's responsibility to supervise all nursing staff on RMU housing units, and to oversee the daily operations of said units and "Record Keeping."

19.  Defendant Leonard R. Terry (Terry) is and was at all relevant times herein employed by DOCS as a nurse at Wende RMU, as such, it was Terry's responsibility to assist in supervising nursing staff, "Record Keeping," support services, and to hear patient complaints or refer them to immediate supervisor.

20.  Defendant C. Ames (Ames) is and was at all relevant times herein employed by DOCS as a nurse at Wende RMU, as such, it was Ames responsibility to assist in supervising nursing staff, "Record Keeping," support services, and to hear patient complaints or refer them to her immediate supervisor.

21.  Defendant K. Gawel (Gawel) is and was at all relevant times herein employed by DOCS as a Nurse's Aide at Wende RMU, as such, it was Gavel's responsibility to see that all doctors orders regarding health care plans were carried out.

22.  Defendant C. Gammons (Gammons) is and was at all relevant times herein employed by DOCS as a Nurse's Aide at Wende RMU, as such, it was Gammons' responsibility to see that all doctors orders regarding health care plans were carried out.

23.  Defendant Lisa Laudero (Laudero) is and was at all relevant times herein employed by DOCS as a Nurse's Aide at Wende RMU, as such, it was Laudero's responsibility to see that all doctors orders regarding health care plans were carried out.

5

24.    Defendant Ashley McCubbin (McCubbin) is and was at all
relevant times herein employed by DOCS as a Nurse's Aide at Wende
RMU, as such, it was McCubbin's responsibility to see that all
doctors orders regarding health care plans are carried out.

25.    Defendant R. Weber (Weber) is and was at all relevant
times herein a Corrections Officer in service at Wende, as such,
it was his responsibility to see that all inmates obeyed all rules
and regulations.

26.    Defendant D. Previtt (Previtt) is, and was at all
relevant times herein employed by the State of New York Office
of Mental Health assigned to Wende as the Unit Chief of the Wende
Mental Health Unit(MHU), as such, it was Previtt's responsibility
to make preliminary evaluations of an inmates Mental Health Status
and assess the need for further indepth treatment.

27.    Defendant Steve Jinks (Jinks) is, and was at all relevant
times herein employed by the State of New York Office of Mental
Health assigned to Wende MHU as a Psychiatric Social Worker, as
such, it was Jink's responsibility to make preliminary interviews
with patients in the MHU and assist the treatment team on their
daily rounds of the MHU.

27(A).    Defendant Correction Officer Hodges (Hodges) is and
was at all relevant times herein a Correction Officer in Service
at Wende assigned to the infirmary second floor, as such, it was
Hodge's responsibility to see that all inmates obeyed all the
rules and regulations.

6

## JURISDICTION

28.   This action arises under and is being brought pursuant
to 42 U.S.C. § 1983, to remedy the deprivation, under the color
of the State law those rights guaranteed by the First, Eighth
and Fourteenth Amendments to the United States Constitution, as
well as those rights guaranteed by The Religious Land Use And
Institutionalized Persons Act, 42 U.S.C. 2000cc-1(a); The Americans
With Disabilities Act of 1990, 42 U.S.C. 12120, 12132; The
Rehabilatation Act of 1973, § 504; and The Civil Rights Act of
1964, 42 U.S.C. §§ 1981, 1984, 1985, and 1986.

29.   Therefore, this Court has jurisdiction under 28 U.S.C.
§§1331 and 1340.

## VENUE

30.   This action arose in the Western District of New York,
therefore, venue is properly laid under 28 U.S.C. §§ 1390, 1391
and 1334.

## PREVIOUS LAW SUITS

31.   Plaintiff has not filed any previous law suits dealing
with the same set of facts involved in this action or otherwise
relating to the issues complained about herein.

7

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. On October 11, 2004, Plaintiff duly filed an institution grievance at Wende, said grievance was assigned grievance number 22139-04.

33. On or about October 31, 2004, a formal grievance hearing was held on grievance 22139-04, and was on that date forwarded to Zon for review and resolution.

34. On November 8, 2004, Zon reversed the grievance committee's decision to restore all services to Plaintiff.

35. On November 12, 2004, Plaintiff appealed Zon's November 8, 2004 decision to DOCS Central Office REVIEW Committee (CORC).

36. On November 10, 2004, filed another grievance at Wende, said grievance was assigned grievance number 22292-04.

37. On November 22, 2004, a formal grievance hearing was held regarding grievance number 22292-04, at which Plaintiff's issues were resolved in his favor.

## STATEMENT OF CLAIM

38. Plaintiff reiterates and incorporates his allegations in paragraphs 1 thru 34 as if fully restated as set forth herein.

39. At all relevant times herein the defendants, with the exception of defendants NYS and DOCS, were all persons within the meaning of 42 U.S.C. 1983, and acted under the color of State Law to deprive Plaintiff of his Constitutional and Statutory rights as set forth more fully below and each is being sued under § 1983

8

in their "Individual Capacities."

40.   Defendants NYS and DOCS, is a soverign state and its
agency and receives federal assisted funding to assist them in
operating their prison system; furthermore, this action seeks
to remedy those violations committed by "ALL" the defendants herein
of those rights guaranteed by the First, Eighth and Fourteenth
Amendments of the United States Constitution; The Religious Land
Use And Institutionalized Persons Act; as well as the Americans
With Disabililties Act; The Rehabilitation Act and The Civil Rights
Act of 1964.   Therefore, each defendant is being sued in their
"Official and Individual Capacities" under the "RLUIPA", "ADA",
"RA" AND "CRA".

## STATEMENT OF FACTS

41.   Plaintiff reiterates and incorporates his allegations
in paragraphs 1 thru 37 as if fully restated and set forth herein.

42.   On January 4, 2001, Plaintiff was committed to the
custody of DOCS where he was to remain until termination or
completion of his sentence imposed upon him under the state law.

43.   Upon his admission medical examination it was determined
that Plaintiff, due to bi-lateral upper extremity paralysis was
in need of assistance with "Activities of Daily Living" (ADL's),
i.e. hand feeding, bathing, dressing/undressing, brushing his
teeth and toileting.

44.   As a result on February 16, 2001, Plaintiff was
transferred to DOCS Coxsackie Correctional Facility's Regional

Medical Unit (Coxsackie RMU), where he did in fact receive assistance as listed above until his transfer 20 months later.

45.  On October 28, 2002, Plaintiff was transferred from Coxsackie RMU to Mohawk Correctional Facilitiy's Walsh Regional Medical Unit (Walsh RMU), where he continued to receive assistance with the above listed ADL's until his transfer 22 months later to Wende RMU.

46.  On July 14, 2004, Plaintiff was transferred to Wende RMU, where he was supposed to receive assistance with his ADL's.

47.  Upon his arrival initially RMU Nursing staff had fed Plaintiff.

48.  On July, 15, 2004, Plaintiff was hand fed his breakfast meal, however, he was not hand fed his lunch meal, but therafter hand fed his dinner meal, as a result Plaintiff was forced to eat his lunch meal like a dog, face down from the top of the standard issue feed-up tray.

49.  Also on July 15, 2004, Plaintiff was informed of the death of his sister (R.I.P.); as a result Plaintiff requested to attend her wake pursuant to DOCS Directive 4206, 9 N.Y.C.R.R. 7051.

50.  On July 16, 2004, defendants NYS and DOCS' Wende RMU staff refused to assist Plaintiff in hand feeding, and so the Plaintiff was forced to eat like a dog again huffing and sucking his food into his mouth like a vacuum, this caused plaintiff to gag, choke and vomit up his food.  Also on this date Plaintiff requested that since he was being forced to eat like an animal, if he could at the very least be provided a "Curtain" to place

10

around him so that people passing by would not look upon him and "Mock" him with dog sounds (barks etc.). Such curtain was originally provided, then at a later date discontinued.

51. On July 17, 2004, defendants NYS and DOCS Wende RMU staff hand fed Plaintiff his breakfast meal, but refused to hand feed him for lunch and dinner meals, therefore, the Plaintiff was forced to eat those two meals like a dog, face down, huffing and sucking his food into his mouth like a vacuum, which caused Plaintiff to gag, choke and vomit up his food.

52. On July 18, 2004, defendants NYS and DOCS Wende RMU staff again refused to assist Plaintiff with hand feeding for any of the three meals served, and so Plaintiff was again forced to eat his food like a dog, huffing and sucking his food into his mouth like a vacuum; Also on this date staff refused to assist Plaintiff in brushing his teeth as previuosly ordered by doctors.

53. On July 19, 2004, Plaintiff was hand fed the breakfast meal, however, he was forced to eat the two (2) remaining meals like a dog, face down in the top of the tray, huffing and sucking the food into his mouth like he was a vacuum, which as previously caused him to gag, choke and vomit his food.

54. Also on July 19, 2004, after requesting a shower daily since his arrival 6 days prior, finally Plaintiff was showered, but staff refused to assist him in brushing his teeth as ordered previuosly by doctors.

55. Also on July 19, 2004, Plaintiff stopped Correction Counselor Vasquez and inquired when would he be taken to his sister's wake. Mr. Vasquez replied that he was informed that

11

Plaintiff did not wish to attend such wake and had refused; Plaintiff immediately informed Mr. Vasquez that he did in fact wish to attend such wake. Mr. Vasquez then told Plaintiff he'd have to get back to him. Thereafter, Plaintiff was told that he would not be allowed to attend the wake due to his way too many medical problems.

56.   On July 20, 2004, defendant Zon wrote to plaintiff and formally informed Plaintiff that "Due to his numerous medical problems" he would not be allowed to attend his sister's wake (Annexed hereto as Exhibit 1, is a copy of said letter).

57.   Also on July 20, 2004, Plaintiff was fed both the breakfast and lunch meals, but refused assistance in hand feeding for the dinner meal, and therefore, he was forced to consume his food as would an animal, which caused him to gag, choke and vomit up his food; defendants NYS and DOCS staff also refused to assist Plaintiff in showering on this day, which prohibited Plaintiff from enjoying his religious practice of evening prays because staff would not help him bath as required for Plaintiff to engage in prays.

58.   On July 21, 2004, defendants NYS and DOCS RMU staff again refused to hand feed Plaintiff either of the three (3) meals served, therefore, again Plaintiff was forced to consume his food like an animal, huffing and sucking the food into his mouth like a vacuum, which caused Plaintiff to gag, choke and vomit his food. Also, on this date defendants staff refused to assist Plaintiff in brushing his teeth as previously ordered by doctors to do twice daily. Plaintiff was also informed by staff that as of this date

12

Plaintiff would only be allowed or showered twice a week, this despite Plaintiff having previous doctors orders to bath him daily. On this date staff refused to bath Plaintiff, and caused Plaintiff not to be able to enjoy the free exercise of his religious practice of daily prays because staff would not assist him in bathing.

59. On July 22, 2004, Plaintiff was hand fed the cereal only during breakfast meal and made to eat the other items served like a dog; for lunch Plaintiff was hand fed the soup only and made to eat the rest of the meal like an animal, which caused him each time to gag, choke and vomit; staff also refused to brush Plaintiff's teeth or put his bi-lateral slings on him as previously ordered by doctors. This caused Paintiff to suffer headaches, neck and back pains and dizziness. Also on this day Plaintiff was moved to a single room and the "Curtain" which used to be placed around him while he ate like a dog was now taken and discontinued.

60. On July 23, 2004, Plaintiff was hand fed the oatmeal only during the breakfast meal and made to eat the remainder like a dog; Plaintiff was not hand fed neither the lunch nor dinner meals and was again forced to eat those meals like a dog, which caused Plaintiff to gag, choke and vomit at each meal. Defendants NYS and DOCS staff also refused to assist him in bathing and so again Plaintiff was unable to exercise his religious practice of daily prays.

61. On July 24, 2004, defendants NYS and DOCS' staff again refused to hand feed Plaintiff either of the three (3) meals served, plus each of the meals arrived to unit cold, and when

Plaintiff requested that the food be heated up in the unit microwave, Plaintiff was told by defendant Terry to stop complaining and whinning because he did'nt give a sh_t, either eat the food cold or don't eat it at all, that either way he(Terry) was not going to tell his nurses to re-heat the trays. Also on this date Terry refused to order nurses to either brush Plaintiff's teeth, put his slings on him or bath him, as a result Plaintiff suffered headaches, neck and back pains, dizziness, vomitted each meal and was unable to freely exercise his rights to freely practice his religion and partake in daily prays.

62. On July 25, 2004, the events of the day before repeated themselves exactly, cold food, no sling, no shower, forced to eat like a dog, gaging, choking and vomitting, unable to exercise religious practices of daily prays.

63. On July 26, 2004, Plaintiff was examined by Doctor Kua,, who advised Plaintiff to file a formal "Request For Reasonable Accomodations" pursuant to DOCS Directive 2614. Plaintiff also complained to Dr. Kua about his aches and pains, Dr, Kua had Plaintiff sent to the pain clinic.

64. On July 27, 2004, Plaintiff was denied assistance with hand feeding at the breakfast and dinner meals; assisted during the lunch meal with eating and the beans only, and further denied assistance with bathing and putting on his slings; as a result Plaintiff suffered headaches, neck and back pains, dizziness and was unable to freely exercise his religious practice of daily prays and readings because he was unbathed.

65. On July 28, 2004, Plaintiff was again denied assistance

14

with hand feeding for all three (3) meals served, bathing, brushing
his teeth and putting on his slings, as a result Plaintiff suffered
headaches, neck and back pains, dizziness, gaged and choked and
vomited up his food and was unable to practice his religious faith
and fulfill his religious requirements.

66.   At this point it needs to be stated, that on many of
those occasions cited above, Plaintiff being a new admission to
the Wende RMU, he was unfamiliar with the particular staff's
members names, mostly because they did not nor do not wear their
name tags identifying them by name and title, so since it is and
was defendants NYS and DOCS' responsibility and duty to ensure
that Plaintiff was provided with the proper medical care and or
reasonable accomodations, these defendants are being held
accountable until such time as those nurses who were assigned
to assist plaintiff on those dates complained of can be identified
from either their personnel photographs or their assignment
rosters/records.

67.   On July 29, 2004, Plaintiff was hand fed the breakfast
meal, but denied asistance during the lunch and dinner meals.
Plaintiff was also poorly showered on this date so he complained
and as a means of retaliating against him, defendants NYS and
DOCS security staff searched Plaintiff's cell, knowing before
hand that as a person having no use of his upper extremeties this
would cause Plaintiff great pains and suffering for him to have
to rearrange his property by using his mouth with no other nursing
assistance.   Then after the search one of the RMU nurse's on duty
called to Plaintiff over the intercom system and said "Shomo,

15

see what happens around here to inmates who like to complain, have fun fixing up your room." As a result of this denial of assistance and retaliatory conduct, Plaintiff suffered extreme headaches, extreme neck and back pains, dizziness, vomiting and extreme emotional trauma (annexed hereto as Exhibit 2, is a copy of the cell search slip).

68.   Also on July 29, 2004, Plaintiff submitted a formal request for Reasonable Accommodations with defendant Zon.

69.   On July 30, 2004, Plaintiff was again denied assistance with hand feeding for all three (3) meals, showers and having his teeth brushed; as a result he vomited his food, and was unable to practice his religious mandates of daily prays and readings.

70.   On August 2,, 2004, Plaintiff was examined by the Wende RMU Occupational Therapy Clinic, where it was determined and recommended that, based upon all available medical records and Plaintitff's "Apparent Astrophy" that Paintiff needed assisitance with "All ADL's" i.e. hand feeding, bathing, dressing/undressing, toileting, brushing his teeth, etc., except putting his shoes on for which were rigged to allow him to perform that task independently (Annexed hereto as Exhibit 3, is a copy of said report).

72.   Also on August 2, 2004, Plaintiff was only hand fed the oatmeal during the breakfast meal and forced to consume the other item like a dog; during the lunch meal Palintiff began to complain about his lack of treatment/assistance, because just hours earlier he had been evaluated by O.T.Rehab who had ordered him to receive such assistance with ADL's, however, as a result

16

of Plaintiff voicing his complaints, and as a means of retaliating
against him as promised, defendant DOCS and NYS security staff
ordered Plaintiff's cell searched again knowing before hand that
this would cause Plaintiff great suffering having to rearrange
his property without assistance (Annexed hereto as Exhibit 4,
is a copy of said cell search slip). Also during the dinner meal
Plaintiff was denied assistance with hand feeding and was forced
to eat like a dog; as a result of this days events Plaintiff
suffered extreme headaches, neck and back pains, dizziness,
emotional trauma.

73.   On August 3, 2004, Plaintiff was hand fed both the
breakfast and lunch meals, but again forced to eat the dinner
meal like an animal; also on this day staff refused to assist
Plaintiff in bathing or brushing his teeth, as a result Plaintiff
vomited, choked, was unable to exercise his religious pbligations
of daily prays and readings.

74.   On August 4, 2004, after weeks of complaining of pain
and aches Plaintiff was taken to the Erie County Medical Center
(E.C.M.C.) Pain Clinic. After being treated Plaintiff was ordered
to be returned to the pain clinic upon his request (PRN) or upon
further complaints of pain; and although Plaintiff has complained
of pain almost daily, defendants NYS, DOCS, Zon, Clemens, and
Bukowski has refused to have plaintiff returned to the E.C.M.C.
Pain Clinic for further treatment as previously ordered by doctors.
As a result Plaintiff has been in a constant continuing state
of extreme headaches, neck and back pains and emotional trauma
since on or about August 12, 2004 til to date.

17

75.   On August 5, 2004, Plaintiff was again denied assistance
with eating the breakfast and dinner meals, but he was however
hand fed the lunch meal; as a result Plaintiff vomited, choked
and gaged from having to huff and suck his food into his mouth.

76.   On August 6, 7, and 8, 2004, the events were identical,
Plaintiff was only one of the three (3) meals on each day and
forced to eat the remaining meals like a dog; he was also denied
assistance with bathing, putting on his slings, and only once
on August 8, 2004, did staff brush his teeth. As a result each
day Plaintiff vomited, gaged and choked, experienced headaches,
neck and back pains, dizziness and was unable to exercise his
religious obligations, suffered extreme humiliation and emotional
trauma.

77.   On August 9, 2004, Plaintiff was denied assistance with
hand feeding for the breakfast and dinner meals and forced to
consume his food like an animal; Plaintiff was also denied
assistance in putting on his slings; as a result he suffered
headaches, neck and back pains, dizziness, vomited his food, and
when he complained , again security staff searched his cell as
a means of retaliation (Annexed hereto as Exhibit 5, is a copy
of said search slip).

78.   On August 10, 2004, nurse's aide Brenner refused to
hand feed Plaintiff or even set up his food to allow him to eat
like a dog.  When Plaintiff complained to the unit supervisor
Nurse Stainberry, Stainberry instructed Brenner not to assist
Plaintiff with any ADL's at all until she determined otherwise.

79.   On August 10, 2004, Plaintiff also received a letter

18

from defendant Veshia, in said correspondence, she acknowledged receipt of plaintiff's complaint of July 25, 2004, regarding having problems receiving assistance with ADL's (showering, being hand fed)(Anneexed hereto as Exhibit 6, is a copy of said correspondence).

80.   On August 11, 2004, Plaintiff request for Reasonable accomodations was granted by Deputy Superintendent H. Dean.   Nurses were to assist Plaintiff with "ALL" ADL's (i.e. hand feedining, bathing, etc.), however, nurse's aide Brenner refused to assist Plaintiff with hand feeding for either the breakfast or lunch meals, then when she came to shower Plaintiff, he made the simple request of having her close the shower curtain so as to afford him a little privacy; Brenner became very irate and told plaintiff that if he wanted the curtain claosed he'd have to use his mouth on the dirty curtain, and when Plaintiff attempted to ring the call bell to complain to the charge nurse, Brenner threw a tirade and ripped the shower curtain from its velcro fasteners and threw it on the floor and yellled at Plaintiff "now you have your privacy."   Brenner then left the room leaving naked and exposed and unattended.

81.   On August 12, 2004, despite Plaintiff having been granted reasonable accommodations with all ADL's just the day before, Plaintiff was transferred to the RMU's second floor medical unit; the second floor is a unit for patients requiring far, far less nursing care than the "Full Care Patient" status that Palintiff's needs required.   Plaintiff was therefore denied assistance with hand feeding on this date for the breakfast and dinner meals;

19

he was also denied assistance with bathing and putting on his
slings. As a result he vomited up his food, had headaches, neck
and back pains, dizziness, emotional trauma and was unable to
fulfill his religious obligations of pray because of the lack
of assistance.

82. On August 13, 2004, Plaintiff was hand fed all three
meals, however, when defendants Gawel and McCorkel entered
Plaintiff's room to give him a shower, Gawel did not have a "Long
Arm Scrub Brush" to wadh Plaintiff, and when Plaintiff protested
Gawel became argumental and aggressive. Plaintiff requested that
Gawel not use the state issue soap on him because it dried his
skin out badly, Gawel refused to use Plaintiff's personal soap
and attempted to use the state issue soap anyway, when plaintiff
again protested and asked Gawel not to use the state issue soap
on his body, Gawel bluntly told the plaintiff to "shut the fuck
up, your an inmate, you don't tell me what to do," Plaintiff then
attempted to call the charge nurse to complain but McCorkle then
intervened and threatened Plaintiff that if he took one more step
that he would beat his ass; Plaintiff then tried to explain that
he was ringing to complain to the charge nurse, McCorkle however,
told him get back in the shower stall then told Gawel "you know
what, as far as I'm concerned his shower is over." Gawel then
left the room to get a towel, when he returned he refused to
properly dry plaintiff off, so Plaintiff grabbed the towel with
his mouth and dropped it on the floor and attempted to pat his
feet dry. Gawel ordered him to stop and give him (Gawel) his
feet, so plaintiff thinking that Gawel was going to dry his feet

20

complied; However, Gawel did not and instead began to put the same "Dirty" socks that he had removed earlier, back on Plaintiff's feet. Plaintiff protested and asked Gawel to stop but Gawel refused, Plaintiff then stated to McCorkle, "are you just going to stand there and watch him harrass me" McCorkle responded "your right, come on Gowel," both defendants left the room, and shortly thereafter Plaintiff was placed in keep-lock status and a false report filed against Plaintiff as a means of retaliation for complaining.

83.   Shortly thereafter defendant Post convened a Tier 3 Superintendents hearing, and despite having had testimony that plaintiff had in fact asked Gowal to stop his treatment and Gowel would not, and that Plaintiff was attempting to complain and that's the true cause of the incident. Post still found Plaintiff guilty of the false accusation that he kicked Gowal slightly on his wrist(no medical documentation ever generated). Plaintiff received 90 days SHU for this report.

84.   On August 14, 2004, Plaintiff was hand fed both the breakfast and lunch meals, but denied assistance in hand feeding for the dinner meal, and assistance in putting on his bi-lateral sling. As a result plaintiff vomited up his food, suffered headaches, extreme neck and back pains, dizziness.

85.   On August 15, 2004, Plaintiff was denied assistance with hand feeding for all three meals, showering and to put his bi-lateral sling on. Also on this day while using the toilet when plaintiff rang the call bell at 8:35 am for assistance in getting off the toilet defendant Gammons refused, and so Plaintiff

21

continued to ring call bell every half hour until finally at
approximately 11 O'clock am Plaintiff was assisted in getting
off the toilet. As a result of the event on this day Plaintiff
suffered vomiting, choking, headaches, neck and back pains,
dizziness, extreme cramping pain of both legs and emotional trauma.

86.   On August 16,2004, Plaintiff was hand fed both the
breakfast and lunch meals, however, during the lunch meal defendant
Gowal attempted to choke Plaintiff in that while feeding him the
hot dog into Plaintiff's mouth each time, and each time after
the initial occurrence, Plaintiff asked Gowal not to shove that
much of the hot dog into his mouth, Gowal continued anyway to
maliciously and sadistically attempt to choke Plaintiff by shoving
the hot dogs down his throat, and did in fact cause Plaintiff
to choke, gag and vomit; further, Plaintiff was thereafter denied
assistance with hand feeding for the dinner meal, and putting
on his bi-lateral sling, the above events, caused Plaintiff to
suffer severe choking, headaches, neck and back pains, dizziness
and emotional trauma.

87.   Also on August 16, 2004, Plaintiff was written a false
misbehavior report by Defendant Moody. When Defendant MOODY
entered Plaintiff's room with the nurse's Aide to brush Plaintiff's
teeth, Plaintiff requested that the aide simply assist him in
placing a postage stamp on an envelope so it could be mailed;
Moody interferred and interjected by stating to Plaintiff "no
she can't, that's not her job, because if you can write all the
damn complaints you be writing on people, then you can put your
own stamp on your mail." Plaintiff attempted to show Moody the

22

approval of Reasonable Accomodations form, Moody still interferred
by stating, "I don't have that, and I don't care what that says,
I said it's not her job and so how I ordering her not to do it
and as a matter of fact, to leave the room." both Moody and the
aide left the room, and Plaintiff's teeth was not brushed either.
As stated by Moody herself, these actions was because of
Plaintiff's complaining (annexed hereto is Exhibit #7, a copy
of the false Misbehavior Report filed by Moody).

88.   On August 18,19,20,21,22, 2004, Plaintiff was hand fed
all three meals, but was denied assistance with bathing, brushing
of teeth and putting on bi-lateral slings, this caused Plaintiff
to suffer, headaches, extreme neck and back pains, dizziness,
and emotional trauma.

89.   On August 24, 2004, Plaintiff was denied assistance
with bathing, brushing his teeth and putting on his bi-lateral
slings,   This caused Plaintiff to suffer headaches, neck and back
pains, dizziness and emotional humiliation as a result of Zon's
staff's refusal to assist him.

90.   On August 25, 2004, Plaintiff was hand fed all three
meals, however, Zon's RMU staff refused to brush his teeth during
th a.m. hour or put his bi-lateral slings on him, as a result
Plaintiff suffered headaches, dizziness, neck and back pains.

91.   On August 26, 2004, Defendant Gawel entered the room
to assist Plaintiff in getting of the toilet, Gawel deliberately
would not properly clean Plaintiff and when Plaintiff complained
and requested that Gawel remove his gown from the inside of his
pajama bottoms Gawel became irate and deliberately hit Plaintiff

23

in the face, then refused to use long arm brush to shower Plaintiff or brush his teeth or put his bi-lateral slings on. As a result Plaintiff was left with feces between his butt itching but unable to scratch for over 7 1/2 hours, he suffered headaches, and neck and back pains, dizziness and extreme trauma.

92. On August 27, 2004, Defendant Gawel refused to assist Plaintiff in Brushing his teeth or putting on his bi-lateral slings. Further as a means of harassing Plaintiff through his religion, Defendant Gowel entered Plaintiff and knowing beforehand that because Plaintiff was a practicing Rastafarian that he'd require either a long arm scrub brush or a female to bath him, Gowal entered to harass Plaintiff by offering to shower him without a long arm scrub brush. As a result of this the Defendant's actions Plaintiff suffered extreme neck and back pain, dizziness and extreme humiliation.

93. On August 28, 2004, although there was sufficient nursing staff Defendant Zon's RMU staff again refused to assist Plaintiff in showering, brushing his teeth or putting on his bi-lateral slings, as a result on each day Plaintiff suffered extreme headaches, neck and back pains, dizziness and emotional humiliation from smelling.

94. On August 30, 2004, at approximately 8:30 a.m. Plaintiff rang the call bell and requested assistance in getting off the toilet   Zon's RMU staff refused and left Plaintiff sitting on the toilet until both his legs had cramped up(3 hours, 10 minutes). Then when they did bring the lunch meal they refused to wipe him, shower him or put his bi-lateral slings on. As a result Plaintiff

24

was made to stay with feces on his rear end itching, stinking until 11 hours later when one of the 3-11 shift aides felt sorry for him and cleaned him properly, however, as a result of not being assisted with putting on his bi-lateral slings, Plaintiff suffered headaches, neck and back pains, dizziness and emotional humiliation from being left with feces on his body.

95.  On August 31,2004, the exact situation repeated itself, Zon's staff leaving Plaintiff on toilet for over 3 hours, then refusing to wipe, shower, or put his bi-lateral slings on thus causing Plaintiff to suffer headaches, neck and back pains, dizziness and humiliation.

96.  On September 1, 2004, Plaintiff was again denied assistance with getting off toilet and was left sitting for about 2 hours, Defendant Gawel came to Plaintiff laughing and smiling and said to Plaintiff "I'll help you Rasta Man." Defendant RAdder then entered the room and refused to wipe Plaintiff. She pulled up his pants and told him the doctor wanted to see him.  Plaintiff was then seen by Defendant Bukowski, as Plaintiff began to voice his concerns and complaints to Bukowski regarding his having so much difficulty in obtaining assistance with ADL"S, Defendant Radder (who was also in the room) became very defensive and stated to Plaintiff "You know, if maybe if you'd stop complaining so much people might try to assist you, that's when we find the time," Plaintiff then replied to her, "but that's what ya'll are here for to assist me." Radder then replied, "yea, we are, get real this is jail, we can also make your stay here very uncomfortable, and the sooner you learn that the better off you'll be." Plaintiff

interpreted this as a threat to mean either he stop filing
complaints or they'd (the staff/other defendant's herein) retaliate
against him by denying him assistance altogether. As a result
of Defendant's Zon's staff leaving Plaintiff on toilet for 2 hours
and not putting on his bi-lateral slings, he suffered headaches,
neck, back and leg pains dizziness, and humiliation from not being
wiped and emotional trauma.

97. Also on September 1, 2004, after the above encounter
with Radder and Bukowski, Plaintiff received a visit from Defendant
Czajka. The purpose of this visit according to Czajka, was to
inform Plaintiff that after discussions with Radder and Bukowski,
and after him reviewing Plaintiff's medical records the he (Czajka)
could not find any basis to support Plaintiff's claims that he
could not move his arms or hands and so he was having Plaintiff
scheduled to be seen by Neurology clinic. Please note this was
despite Plaintiff having just been examined by doctors 20 days
prior and approved for Rasonable Accommodations with All ADL's;
and despite having Neurology Consultations stating Plaintiff's
test were complete and he needed no further neuro testing; and
despite that Czajka himself had reviewed Plaintiff's chart prior
and denied him clearance to attend his sister's funeral because
as Czajka put it then, Plaintiff's numerous medical problems
prohibited it.

98. On September 2, 2004, Radder made the neurology
consultation for Plaintiff to be re-evaluated (annexed hereto
as Exhibit #8, is a copy of said refferal/notification of specialty
clinic).

26

99.   Also on September 2, 2004, Plaintiff was again denied assistance with getting off toilet and left for 2½ hours until his legs were cramped and in pain; then denied assistance with showering and putting his bi-lateral slings on. As a result he suffered headaches, neck and back pains, dizziness, humiliation and emotional trauma.

100.   On September 3, 2004, Defendant Gammons refused to assist Plaintiff in eating portions of the breakfast meal; and when Plaintiff rang the call to complain to the charge nurse; as he was telling the charge nurse that Gammons was trying to make him feed like animal, Gammons who was in the nurse's station, interjected by telling Plaintiff "which animal do you want to be today?" Then shortly thereafter as a form of further harrassing Plaintiff, Gammons gave Plaintiff a shower but refused to remove his pajama pants, Gammons washed Plaintiff's upper body and from his knees down then refused to assist Plaintiff in removing the dirty wet pajama pants; She refused to brush his teeth or thereafter put on his bilateral slings, as a result Plaintiff suffered headaches, neck and back pains, dizziness, humiliation and extreme emotional trauma.

101.   On September 4 and 5, 2004, Plaintiff was denied assistance with showering and putting on his bi-lateral slings, as a result on each of these days Plaintiff suffered headaches, neck and back pain, dizziness and emotional trauma.

102.   On September 6, 7 and 8, 2004, on all of these days Plaintiff was denied assistance with showering, brushing his teeth and putting his bi-lateral slings on by Gammons and/or Gowal;

27

as a result plaintiff suffered headaches, neck and back pains,
dizziness, humiliation and extreme emotional trauma and stress,
(annexed hereto is Exhibits # 10,11 is a copy of a complaint with
Zon).

103.   On September 9, 2004, Plaintiff was denied assistance
with getting off toilet by Gawel, Plaintiff rang call bell at
around 8:30 a.m. and requested assistance, Gawel refused to inform
nurses that Plaintiff was in need of assistance as so Plaintiff
was again forced to sit on toilet until his legs cramped and hurt
for 2 hours, Plaintiff was also denied showers, and assistance
in putting on his bi-lateral slings, As a result Plaintiff again
suffered headaches, neck and back pains, dizziness, humiliation
and extreme emotional trauma (annexed hereto is Exhibit #12, is
a copy of the complaint filed with Zon).

104.   On September 10, 2004, Defendant Holland responded
on behalf of Zon to one of Plaintiff's numerous complaints.
(annexed as Exhibit #13, is a copy of said response).

105.   Also on September 10 and 11, 2004, Plaintiff was denied
assistance with showering and putting on his bi-lateral slings,
as a result he suffered headaches, neck and back pains, dizziness,
humiliation and emotional trauma.

106.   On September 12, 2004, Plaintiff was denied assistance
with showering by Gammons, and when he complained to Radder, she
told Plaintiff he would be given a shower later that evening
however, he was told later that if he was to receive any showers
that Gammons was supposed to have showered him earlier that day.
As a result Plaintiff was humiliated and threatened by other

patients to either shower or be dealt a beating.

107.    On September 13, 2004, Plaintiff was again denied
assistance with showering and putting on his bi-lateral slings.
on this date Plaintiff was also examined by Clemens and/or
Bukowski; where he voiced his complaints of dizziness, neck and
back pains, lack of assistance, he was told that all nursing
problems would have to be addressed by either Czajka, Holland,
Veshia, or Post.  Plaintiff still was not showered or assisted
with putting on his bi-lateral slings, as a result he suffered
again headaches, neck and back pains, dizziness, humiliation and
emotional trauma and he could not enter religious pray in his
dirty state.

108.    On September 15, 2004, Plaintiff was seen by Defendant
Cowen, during this interview Cowen refused to take the Plaintiff's
history nor did he ask any probative questions such as how the
injury occurred, in fact even when Plaintiff attempted to explain
how he was injured and his past treatment, Cowen flat out refused
to let Plaintiff explain and in fact demanded that Plaintiff not
talk at all until he (Cowan) completed his written consultation
report and when this was done Cowan turned to Plaintiff and said
"I'm done." Plaintiff then began to tell him about his prior
physicians and their treatment plans.  So Plaintiff asked "I used
to receive heat pad and tens unit treatment in occupational
therapy, do you think I could resume that treatment to relieve
my neck and back pains?"  Cowan bluntly replied "When do you expect
to get released?" Plaintiff replied "Hopefully in a year or two
if all goes well with my appeal."  Cowan then aggressively stated

"Good, that's when you get the treatment, good-bye, you get nothing from me." At this point Plaintiff was told to leave the exam room, without being allowed to further comment, or without any treatment being offered for his pains, dizziness.

109.   Also on September 15, 2004, Defendant Holland responded to Plaintiff's complaints against Gammons on behalf of Zon.   In such response, however, she notes that although she does not have Cowan's neurology report as of then, that adjustments to Plaintiff's care plan would be forthcoming. How she could make this statement without having Cowan's report available only goes to show that half of Plaintiff's medical records were intentionally withheld from Cowan to solicit the result given.

110.   On September 16, 2004, as a means of retaliating against Plaintiff for asserting his constitutional rights to redress of grievances, Gammons, first placed Plaintiff in a cold shower and after Plaintiff complained, Gammons filed false misbehavior reports against him, causing Plaintiff to be wrongfully confined.   Shortly thereafter on August 29,2004, Defendant Walter's violated Plaintiff's due process rights in the furtherance of the retaliation by refusing to appoint Plaintiff an assistant to aid Plaintiff in identifying the one employee who witnessed the encounter and could have refuted and proved Gammons to be acting unconstitutionally.

111.   On September 17,18 and 19, 2004, Plaintiff was again denied assistance in showering and putting on his bi-lateral slings, in particular on September 19, 2004, when Plaintiff complained  Correction Sergeant Higley responded to the unit and

30

told if he did'nt ask for a shower he won't receive one so tough;
Plaintiff then remarked "since when do patients have to ask for
treatment already ordered," the response came "your not a patient,
your a convicted felon." On these occasions Plaintiff suffered
headaches, neck and back pains, dizziness, humiliation and extreme
emotional trauma.

112. On September 21, 2004. Plaintiff was again refused
assistance in bathing and putting his bi-lateral slings on by
Gammons, as a result he suffered headaches, neck and back pains,
dizziness, humiliation, emotional trauma. Plaintiff was also
again threatened by other inmate to shower or be dealt a beating.

113. On September 22 and 23, 2004 Plaintiff was again denied
assistance in bathing and putting his bi-lateral slings on; as
a result he suffered headaches, neck and back pains, dizziness,
humiliation, emotional trauma, and extreme fear that if he went
to recreation the other inmates would assault him.

114. On September 24, 2004, Gammons again refused to assist
Plaintiff in putting on his slings, and when Plaintiff complained
that he was feeling dizzy, Gammons refused to assist him in
steadying himself and Plaintiff had to fall to his bed. This
date Csjaka responded to Plaintiff's complaints, Exhibit 15.

115. On September 25, 2004, Gammons refused to assist
Plaintiff in eating the breakfast and lunch meals, to shower him
or put his slings on as a result Plaintiff suffered headaches,
neck and back pains, dizziness, humiliation, vomited, and extreme
emotional trauma, nor was he he able to pray because he was
unbathed.

3